AO 91 (Rev. 11/11) Criminal Complaint

**SEALED**
**BY ORDER OF THE COURT**

# UNITED STATES DISTRICT COURT
for the
District of Hawaii

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII
**Jun 28, 2021**
Michelle Rynne, Clerk of Court

| | |
|---|---|
| United States of America<br>v.<br>Jason Darnell Smith<br>aka "Famous"<br><br>Defendant(s) | Case No.<br>Mag. No. 21-00784 RT |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___(see below)___ in the county of ___Honolulu___ in the _____ District of ___Hawaii___, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 USC § 841(a)(1) 21 USC § 841(b)(1)(A) 21 USC § 841(b)(1)(C) 18 USC § 2 | Distribution of Controlled Substances:<br>1. 4/24/2020 50g or more of actual methamphetamine;<br>2. 5/12/2020 fentanyl;<br>3. 6/14-17/2020 fentanyl; and<br>4. 6/14/2020 to 7/2/2020 50g or more of actual methamphetamine. |

This criminal complaint is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

_____
Complainant's signature
Grant Jhun, Task Force Officer, DEA
Printed name and title

Sworn to under oath before me telephonically, and attestation acknowledged pursuant to Federal Rule of Criminal Procedure 4.1(b)(2).

Date: June 28, 2021

City and state: Honolulu, HI

_____
Rom A. Trader
United States Magistrate Judge

# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

Grant H. Jhun, after being duly sworn, deposes and states as follows:

1. I submit this Affidavit in support of the foregoing Criminal Complaint charging Jason Darnell Smith with distribution of controlled substances, in violation of Title 21, United States Code, Section 841(a)(1).

2. The facts in this Affidavit come from my personal observations, my training, my experience, and information obtained from other law enforcement officers and agents and from other witnesses. This Affidavit is intended to show only that probable cause exists for the charge(s) in the Criminal Complaint and does not set forth all of my knowledge or all of the information known to the government about this matter.

## AFFIANT TRAINING, EXPERIENCE AND KNOWLEDGE

3. Your affiant has been employed with the Honolulu Police Department ("HPD") since April 24, 1997. Your affiant is currently a Metropolitan Police Sergeant assigned to the Narcotics and Vice Division since July 2019. Your affiant is also a full-time deputized Task Force Officer with the Drug Enforcement Administration ("DEA"). My duties include, but are not limited to, investigating drug trafficking and organized crime groups. I am an investigative law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, and empowered by law to conduct investigations of

and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code. Through my training and experience, I have become familiar with the manner in which criminal offenders operate, and the efforts of those involved in such activities.

4. In my capacity as a Task Force Officer, I have become versed in the methodology utilized in criminal enterprises, such as narcotics trafficking operations, and I have become knowledgeable about the enforcement of state and federal laws pertaining to violations listed under 21 U.S.C. §§ 841 and 846. I am experienced in evidence collection, physical surveillance, interviews, and the use of search warrants, wiretaps, and informants. As a Task Force Officer, I am authorized to investigate violations of laws of the United States and am a law enforcement officer with the authority to execute search warrants issued under the authority of the United States. I have participated in multiple investigations utilizing wiretaps of wire and electronic communications.

## PROBABLE CAUSE

5. In February 2020, HPD and DEA received information identifying Jason Darnell Smith ("SMITH"), aka "Famous," as the leader of a Honolulu, Hawaii based drug trafficking organization ("DTO") engaged in the distribution of controlled substances, including opioids such as oxycodone tablets and counterfeit

tablets containing fentanyl and/or oxycodone; methamphetamine; and fentanyl-laced heroin (often referred to as "Afghan White").

6. On April 24, 2020, HPD conducted a controlled "Buy/Walk" operation utilizing a Confidential Source ("CS") to introduce an FBI certified undercover employee ("UCE") to SMITH. At approximately 2:02 p.m., SMITH met with UCE and the CS in Honolulu, Hawaii. UCE purchased approximately four ounces of a substance consistent in appearance with methamphetamine from SMITH for $1,200. UCE asked SMITH about the ability to contact SMITH directly in order to conduct future narcotics transactions. SMITH provided UCE with his phone number ("Target Cell Phone 1" or "TCP1"). UCE then placed a call to Target Cell Phone 1 and observed the telephone number of UCE's undercover phone appear on the display screen of the cell phone in SMITH's hand.

7. Upon completion of the transaction, SMITH exited UCE's vehicle and entered the front passenger side of a white Mercedes-Benz sedan bearing State of Hawaii license plates TXV 719, which is registered to "Jason D. Smith" according to Hawaii Department of Motor Vehicle records. Subsequently, UCE identified a known government photograph of the registered owner of the Mercedes, Jason D. Smith, as depicting the individual who distributed the methamphetamine to UCE and who is known to UCE and CS as SMITH aka "Famous."

3

8. The substance purchased from SMITH has been tested by the DEA Southwest Laboratory and confirmed to contain methamphetamine, a Schedule II controlled substance. The lab determined that the substance weighed at least 111.8 grams and contained at least 102.86 grams of actual methamphetamine.

9. Following the transaction, UCE had the following text message conversation with SMITH at Target Cell Phone 1:

1428 hours UCE  *Yo! This* [REDACTED]. *Thanks again. LMK if you come across the blues*[1]
1430 hours TCP1 *Rajah*

I know from my training and experience that the term "blues" is street vernacular for 30mg oxycodone pills, a Schedule II controlled substance.

10. On May 12, 2020, UCE communicated with SMITH at Target Cell Phone 1 in order to arrange another narcotics transaction. Following the telephone call, UCE met SMITH at the agreed upon location in Honolulu, Hawaii. UCE purchased 20 purported oxycodone pills from SMITH for $500 during a controlled transaction. The HPD Scientific Investigation Section has tested the pills and determined they contain fentanyl, a Schedule II controlled substance.

---

[1] Communications are described by time of the communication; person or device originating the communication; and either the verbatim substance of the text communication in italics or the notation "Call" followed by a summary of the voice communication or attempted voice communication in parentheses.

11. On June 14, 2020, UCE exchanged text messages with SMITH at a second phone number ("Target Cell Phone 2" or "TCP2"). During the exchange of texts, SMITH provided UCE with names and telephone numbers for two other members of the DTO who could supply UCE with narcotics. SMITH referred UCE to SUBJECT 2 at SMITH's prior phone number, Target Cell Phone 1, as a source of methamphetamine, and to SUBJECT 3 at a third phone number ("Target Cell Phone 3") as a source of pills:

12. As directed by SMITH, UCE exchanged text messages with SUBJECT 3 on June 16, 2020, at Target Cell Phone 3 in order to arrange a narcotics transaction. UCE met with SUBJECT 3 on June 17, 2020, in Honolulu, Hawaii, and purchased 100 purported oxycodone pills for $2,400. The DEA Southwest Laboratory has examined the pills and determined the pills contain fentanyl, a Schedule II controlled substance.

13. As directed by SMITH, UCE had telephone conversations on June 24, 2020, with SUBJECT 2 at Target Cell Phone 1. During these conversations, SUBJECT 2 told UCE that s/he was only willing to sell methamphetamine at the rate of $200 for one-eighth of an ounce.

14. On June 24, 2020, UCE exchanged text messages with SMITH at Target Cell Phone 2. During the exchange of texts, SMITH instructed UCE to contact Target Cell Phone 1 to purchase methamphetamine:

5

| 2038 hours | UCE | *Yo. What's up famous* |
| 2053 hours | UCE | *Tryna grab the same thing but your boy [REDACTED] said he only do balls* |
| 2053 hours | UCE | *I needed a quarter* |
| 2055 hours | TCP2 | *Call the 208 he the only one who has* |

I know from my training and experience that the term "balls" is street vernacular for an "eight ball" or one-eighth of an ounce, and the term "quarter" is street vernacular for a quarter of a pound or four ounces. Additionally, based on the above information, I believe SMITH's direction to call "208" was a reference to Target Cell Phone 1, which has a prefix of 208.

15. On June 25, 2020, UCE exchanged text messages with SMITH at Target Cell Phone 2. During the exchange of texts, SMITH explained SUBJECT 2's pricing for methamphetamine:

| 1120 hours | UCE | *Talked to your boy [REDACTED]. Told em I needed zips. He said he only going run the balls at 200 a crack even if I grab plenty* |
| 1139 hours | TCP2 | *That's because they 16 a zip so it's the same thang he made balls because all my people can't afford 16 a zip* |
| 2156 hours | UCE | *I understand. Everybody gotta est and its dry everywhere. I'll hit your boy back when I got the paper put together. Thanks again for hooking it up* |
| 2157 hours | TCP2 | *Yup* |

I know from my training and experience that the term "zip" is street vernacular for one ounce, and the term "paper" is a street vernacular for money. The conversation

6

references the price of methamphetamine at $200 for one-eighth of an ounce and $1,600 per ounce.

16. On July 2, 2020, UCE exchanged text messages with SMITH at Target Cell Phone 2:

0915 hours  UCE  *Yo! Was gonna grab clear today u still want me hit up your boy* [REDACTED] *for that?*
0923 hours  TCP2  *Yup*
0923 hours  UCE  *Shoots*

I know from my training and experience the term "clear" is street vernacular for methamphetamine.

17. On July 2, 2020, UCE exchanged phone calls with SUBJECT 2 at Target Cell Phone 1 to negotiate a narcotics transaction. On the same date, UCE met SUBJECT 2 in Honolulu, Hawaii. During the meeting, SUBJECT 2 sold UCE approximately three ounces of a substance consistent in appearance with methamphetamine for $5,000. The substance purchased from SUBJECT 2 has been tested by the DEA Southwest Laboratory and determined to contain methamphetamine, a Schedule II controlled substance. The lab determined that the substance weighed at least 90.3 grams and contained at least 83.98 grams of actual methamphetamine.

18. Based on the foregoing, I believe probable cause exists to charge SMITH with distribution of controlled substances, in violation Title 21, United States Code, Section 841(a)(1), as charged in the foregoing Criminal Complaint.

Respectfully submitted,

Grant H. Jhun
Task Force Officer
Drug Enforcement Administration

This Criminal Complaint and Affidavit in support thereof were presented to, approved by, and probable cause to believe that the defendant above-named committed the charged crime(s) found to exist by the undersigned Judicial Officer at __12:08__ _p_.m. on June _28_, 2021.

Sworn to under oath before me telephonically, and attestation acknowledged pursuant to Federal Rule of Criminal Procedure 4.1(b)(2), on this _28th_ day of June 2021, at Honolulu, Hawaii.

Rom A. Trader
United States Magistrate Judge